UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X

SAINT CHARLES FLERINORD,

                Petitioner,

       - against -                    **MEMORANDUM AND ORDER**

MICHAEL MUKASEY, Attorney General        05 Civ. 8920 (NRB)
of the United States; MICHAEL
CHERTOFF, Secretary of the
Department of Homeland Security;
EDUARDO AGUIRRE, Director, United
States Citizenship and Immigration
Services; and ANDREA QUARANTILLO,
District Director, United States
Citizenship and Immigration
Services, N.Y. District,

                Respondents.

------------------------------------X



**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

      Saint Charles Flerinord ("petitioner") brings this action for attorney's fees against Michael Mukasey, Michael Chertoff, Eduardo Aguirre, and Andrea Quarantillo (collectively, "respondents" or "the government") under the Equal Access to Justice Act. 28 U.S.C. § 2412(d)(1)(A). For the reasons set forth below, petitioner's petition is denied.

### BACKGROUND

      Petitioner was born in Haiti on March 16, 1972. (Resp't Mem. 3.) In April 1993, petitioner's father, Hermilus Flerinord, a lawful permanent resident alien living in New

Jersey, filed an immediate relative visa petition on his son's behalf with the United States Immigration and Naturalization Services ("INS"), the predecessor of the U.S. Citizenship and Immigration Services ("CIS"). (Resp't Mem. 3.) Petitioner's father sought to have petitioner classified as an unmarried child of a lawful permanent resident and this petition was approved in April 1994. (Resp't Mem. 3.)

As a result of this approval, petitioner applied to the United States consulate in Port-au-Prince ("consulate") for an immigration visa. (Resp't Mem. 4.) In May 1999 the consulate issued petitioner an F11 immigrant visa as the unmarried child of a United States citizen (because petitioner's father became a naturalized United States citizen while petitioner's visa application was pending). (Resp't Mem. 3-4; Pet'r Mem. 3.) However, petitioner was married in December 1998, before he emigrated from Haiti in June 1999, invalidating the basis for his F11 visa. (Resp't Mem. 4-5.) Petitioner did not disclose his change marital status when he arrived in this country. (Resp't Mem. 5)

On April 24, 2004 petitioner applied to the CIS to become a naturalized citizen of the United States. (Resp't Mem. 4.) In his application, petitioner disclosed his 1998 marriage. (Resp't Mem. 5.) On December 23, 2004 the CIS issued an initial decision denying petitioner's naturalization application,

2

finding that petitioner failed to show he was lawfully admitted to the United States because his immigrant visa was predicated on his unmarried status, and he was married when he entered the country. (Resp't Mem. 5.)

On February 28, 2005 petitioner filed an appeal pursuant to section 336(a) of the Immigration and Nationality Act of 1952 ("INA"), 8 U.S.C. § 1447(a), claiming that he lawfully entered the country because, at the time he immigrated, he could have qualified for an immigrant visa as the married child of a United States citizen. (Resp't Mem. 5.) In a June 21, 2005 decision, the CIS confirmed its initial denial of petitioner's petition and found that because petitioner failed to disclose his marital status to immigration inspectors upon his entry into the United States, he procured his admission to the United States "by fraud or [by] willfully misrepresenting a material fact," and was therefore inadmissible to the country. (Resp't Mem. 6.)

In response, petitioner filed a petition in district court seeking, inter alia, review of his naturalization application, and an order "granting his oath of citizenship." (Resp't Mem. 6.) In June 2007, the parties submitted a stipulation and order (the "Stipulation") dismissing the matter with prejudice. (Resp't Mem. 6.) Under the Stipulation, the CIS was to reopen petitioner's application for renewed consideration without regard to the circumstances under which petitioner was admitted

3

to the United States in June of 1999. (Resp't Mem. 6-7.) The Stipulation reserved petitioner's right to:

> apply to the Court for reasonable fees and costs and to reinstate the action within ninety days of the entry of this Stipulation and Order, by written notice to the Court, upon ten days' prior notice to the United States Attorney's Office for the Southern District of New York, if the CIS has not scheduled an oath ceremony for petitioner before that date.

On July 10, 2007 this Court signed the Stipulation, and it was entered on the Court's docket on July 16, 2007. (Stipulation 2.) On September 18, 2007 the CIS scheduled petitioner's oath ceremony for October 12, 2007. (Pet'r Reply Aff. 2.) On October 12, 2007, petitioner both was sworn in as a United States citizen and filed this motion for attorney's fees under the EAJA.

## DISCUSSION

### I. The EAJA's Attorney's Fees Provision

The EAJA authorizes a prevailing party to collect attorney's fees "in any civil action . . . brought by or against the United States . . . unless the court finds that the position of the United States was substantially justified." 28 U.S.C. § 2412(d)(1)(A).

The EAJA requires a party seeking attorney's fees to, "within thirty days of final judgment in the action, submit to the court an application for fees and other expenses which shows

4

that the party is a prevailing party and is eligible to receive an award." 28 U.S.C. § 2412(d)(1)(B).

## II. Timeliness of Petitioner's Motion for Attorney's Fees

In this case, the final judgment was entered on July 16, 2007 and petitioner filed his motion for fees on October 12, 2007, eighty-eight days later. Based on this time lapse, the government argues that petitioner's motion is untimely.

In response, petitioner contends that July 16, 2007 is not the operative date from which his time to file began to run. Instead, according to petitioner, the thirty day period was tolled until September 18, 2007, when the CIS scheduled his oath ceremony, thereby ending the possibility of further litigation. Petitioner bases this argument on the Stipulation provision that allowed reinstatement of the action if the CIS had not scheduled petitioner's oath ceremony within ninety days of the Stipulation's entry. Under his view, the scheduling of the oath ceremony made the Stipulation final and he had thirty days from this date in which to file his fees motion. Accordingly, petitioner claims the motion is timely because it was filed on October 12, 2007, six days before the October 18, 2007 cut-off.

The threshold issue, then, is the date on which final judgment was entered. "Final judgment" for purposes of EAJA fee applications is defined as "a judgment that is final and not appealable, [including] an order of settlement." 28 U.S.C.

§ 2412(d)(2)(G). While on its face this language suggests that the Stipulation was a final judgment when entered, the case law on whether settlement orders are appealable is conflicting. Because a determination as to whether the Stipulation was appealable affects the timeliness of this petition,[1] and because the petitioner did not directly brief this issue,[2] we believe that, rather than attempting to resolve this case on timeliness grounds, the more expeditious course is to decide petitioner's claim on the merits.

---

[1] See Luna v. Apfel, 986 F. Supp. 275, 278 (D.N.J. 1997)(noting a split in the circuits as to whether consent decrees are appealable). A decision in this district has followed Luna and held that consent decrees are appealable. See Christian ex rel. Hinkley v. Apfel, No. 96-7766, 1998 U.S. Dist. LEXIS 11564, at *6 (S.D.N.Y. July 28, 1998).

If the Stipulation was not appealable, under the EAJA, petitioner only had thirty days from the date of its entry, July 16, 2007, in which to move for fees. In this scenario, the petition for fees was untimely. However, if the Stipulation was appealable, then it became final sixty days after it was entered when petitioner time to appeal expired, which was September 14, 2006. See Fed. R. App. P. 4(a)(1)(B). Accordingly, the thirty-day period in which to move for fees began to run at that point, and petitioner's motion for fees would be timely as it was filed on October 12, 2007, two days before the expiration of the thirty day period.

[2] As mentioned above, petitioner argues that the July 16 judgment was not final, because the action was subject to reinstatement if the CIS did not schedule an oath ceremony within 90 days. The government responds that its scheduling decision does not affect the finality of the Stipulation because Congress' use of "judgment" in 28 U.S.C. § 2412 refers to judgments entered by a court of law, not an administrative agency such as the CIS. The government's argument is not entirely persuasive, however, because petitioner's argument is not that the CIS rendered the "final judgment," but that the CIS's action (in scheduling the oath ceremony) negated the condition precedent in the Stipulation, thus rendering the Stipulation final.

## III. Substantial Justification of the Government's Position

As noted, a prevailing party is not entitled to fees under the EAJA if the position of the United States was "substantially justified." 28 U.S.C. § 2412(d)(1)(A). The government bears the burden of showing that its position was "substantially justified," and to meet that burden, it must make a "strong showing" that its action was "justified to a degree that could satisfy a reasonable person." Pierce v. Underwood, 487 U.S. 552, 565 (1988); Envtl. Def. Fund, Inc. v. Watt, 722 F.2d 1081, 1085 (2d Cir. 1983); see also Pierce, 487 U.S. at 565 (noting that the Government's position must have a "reasonable basis both in law and fact").

However, when an alien seeks citizenship, "the burden is on the alien applicant to show his eligibility for citizenship in every respect." INS v. Pangilian, 486 U.S. 875, 886 (1988)(quoting Berenyi v. Dist. Dir., INS, 385 U.S. 630, 637 (1967). "[T]here must be strict compliance with all the congressionally imposed prerequisites to the acquisition of citizenship." Fedorenko v. United States, 499 U.S. 490, 506 (1981). Thus, in this case, the petitioner's ability to meet his burden of showing that he was eligible for citizenship affects whether the government was "substantially justified" in denying his petition. In other words, if petitioner was not

7

eligible when he applied for citizenship, the government's decision cannot be a basis for the award of attorney's fees.

With respect to the eligibility analysis, the relevant INA requirement is that "no person shall be naturalized unless he has been lawfully admitted to the United States for permanent residence." 8 U.S.C. § 1429. The Board of Immigration Appeals (BIA) has held that "the term 'lawfully admitted for permanent residence' d[oes] not apply to aliens who . . . obtained their permanent resident status by fraud, or had otherwise not been entitled to it." In re Koloamatangi, 23 I. & N. Dec. 548, 550 (BIA 2003); 8 U.S.C. § 1182(a)(6)(C)(i). The Second Circuit has affirmed the BIA's interpretation as reasonable. See De La Rosa v. U.S. Dept. of Homeland Security, 489 F.3d 551, 554-555 (2d Cir. 2007)(citing Chevron, U.S.A., Inc. v. Natural Res. Def. Council, 467 U.S. 837 (1984)).

Accordingly, we find that the government's decision was "substantially justified" because petitioner did not meet his own burden of showing strict compliance with the requirement that he was lawfully admitted to the United States for permanent residence. Petitioner was married in December 1998, but in June 1999 he entered the United States on an F11 visa as an unmarried son of a United States Citizen. Thus, the CIS had a reasonable basis both in law and fact for finding that petitioner, in not disclosing his marital status to immigration inspectors upon

entry to the United States, obtained his permanent residency status by fraud. See De La Rosa v. U.S. Dept. of Homeland Security, 489 F.3d 551, 554-55 (2d Cir. 2007) (per curiam)(holding that even an alien who has been granted adjustment to lawful permanent resident status has not been 'lawfully admitted for permanent residence' when originally ineligible for that status). Petitioner cites no authority, and we are aware of none, to support his claim that fraudulent entry into the United States is "lawful" merely because an alternative legal basis existed for permanent legal residency at the time of entry and the fraudulent conduct.

Petitioner's suggestion is not only unprecedented, but would also turn the admissions process for aliens on its head and would be totally unworkable. The investigation into an alien's eligibility for a visa necessarily must take place before the visa is issued and is predicated in the first instance on information furnished by the alien. Petitioner's argument, if accepted, would also require the government to determine, upon an alien's arrival into this country, whether alternative types of visas could support his lawful entry. As even the most cursory analysis makes clear, this is an unworkable proposal. How is the CIS to know if there is an alternative visa available if the immigrant does not disclose the status that would make the alternative relevant?

Therefore, we find that the CIS was substantially justified in concluding that petitioner was not lawfully admitted to the United States for permanent residency, and thus was substantially justified in denying petitioner's application for naturalization.

## CONCLUSION

For the foregoing reasons, the petition for attorney's fees is denied.

**IT IS SO ORDERED.**

DATED: New York, New York
June 17, 2008

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

Copies of the foregoing Memorandum and Order have been mailed on this date to the following:

**Counsel for Petitioner**
Macx L. Jean-Louis, Esq.
305 Broadway Suite 1001
New York, NY 10007

**Counsel for Respondents**
F. James Loprest, Jr.
Special Assistant U.S. Attorney
Office of the U.S. Attorney
86 Chambers Street
New York, NY 10007